IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
(PINE BLUFF DIVISION)

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 05 2012

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

| | | |
|---|---|---|
| ARTHUR L. HARRIS, | § | |
| NEHEMIAH JEFFERSON, | § | |
| and WILLIE L. JONES, | § | |
| *Plaintiffs*, | § | |
| | § | |
| vs. | § | CIVIL ACTION No. 5:12-CV-0203 KGB |
| | § | JURY DEMAND |
| UNION PACIFIC RAILROAD | § | |
| COMPANY, | § | |
| *Defendant*. | § | This case assigned to District Judge Baker |
| | § | and to Magistrate Judge Ray |

## COMPLAINT

COMES NOW, Plaintiffs, ARTHUR L. HARRIS, NEHEMIAH JEFFERSON, and WILLIE L. JONES, (hereinafter collectively referred to as "Plaintiffs"), complaining of Defendant, UNION PACIFIC RAILROAD COMPANY, A Corporation, Individually and as Successor-in-Interest to the Missouri Pacific Railroad Company, Missouri-Kansas-Texas Railroad Company, Chicago & Northwestern Transportation Company, Southern Pacific Transportation Company, and the St. Louis Southwestern Railway Company a/k/a Cotton Belt Railroad, (hereinafter collectively referred to as "Defendant Railroad"), and in support hereof respectfully shows the Court as follows:

### A. PARTIES

1. Plaintiff, ARTHUR L. HARRIS, is a resident of Lincoln County, Arkansas. Mr. Harris was employed by Defendant Railroad in various capacities including as a Machinist from approximately 1972 until approximately 2003, in Jefferson County, Arkansas.

2. Plaintiff, NEHEMIAH JEFFERSON, is a resident of Jefferson County, Arkansas. Mr. Jefferson was employed by Defendant Railroad in various capacities including

Boilermaker from approximately 1967 until approximately 2002, in Jefferson County, Arkansas.

3. Plaintiff, WILLIE L. JONES is a resident of Jefferson County, Arkansas. Mr. Jones was employed by Defendant Railroad in various capacities including as an Electrician from approximately 1972 until approximately 2000, in Jefferson County, Arkansas.

4. Defendant Railroad, UNION PACIFIC RAILROAD COMPANY, Individually and as Successor-in-Interest to the Missouri Pacific Railroad Company, Missouri-Kansas-Texas Railroad Company, Chicago & Northwestern Transportation Company, Southern Pacific Transportation Company, and the St. Louis Southwestern Railway Company a/k/a Cotton Belt Railroad, is and has at all relevant times been a common carrier by railroad, engaged in interstate commerce, in and throughout the United States and may be served with process by serving its registered agent, to wit: **The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201**.

## B. JURISDICTION & VENUE.

5. At all relevant times, UNION PACIFIC was engaged in interstate commerce as a common carrier by rail, and all or part of Plaintiffs' duties have been in furtherance of and have closely, directly and substantially affected interstate commerce; wherefore the rights and liabilities of the parties were and are governed by the Federal Employers' Liability Act, 45 U.S.C., § 51 *et seq.*, which grants this Court jurisdiction over this action.

6. Venue is proper in U.S. District Court for the Eastern District of Arkansas because it is the district: (i) in which the cause of action arose; (ii) and/or in which UNION PACIFIC was conducting business at the time this action was commenced. 45 U.S.C. § 56.

## C. FACTS

7. Under the Federal Employers' Liability Act (the "FELA"), Defendant Railroad is liable for damages to any employee suffering injury or death as a result of his or her employment with such carrier, where such injury or death results <u>in whole or in part</u> from the negligence of any of the officers, agents, or employees of Defendant Railroad, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.

8. The FELA places a continuing non-delegable duty on Defendant Railroad to furnish its employees, including the Plaintiffs, with a safe place to work.

9. According to Defendant Railroad's Asbestos Protection Policy, dated January 1, 1985, at VII-2, "Asbestos is a term used to describe a number of fibrous silicate minerals mined from deposits in the earth's surface. In its raw form, asbestos appears to be a powdery clay-like material. Under a microscope, however, asbestos resembles sharp needle-like rods stacked one on top of the other."

10. According to Defendant Railroad's video, Asbestos Awareness Training – Health Risks, I.D. S-321-95, "The adverse health effects associated with asbestos exposure have been studied for many years. Results of these studies and epidemiological investigations have demonstrated that inhaling asbestos fibers may lead to an increased risk of developing one or more diseases. Exactly why some people develop these diseases and others do not, remains a mystery."

11. According to Defendant Railroad's video, "Asbestos Awareness Training – Health Risks," I.D. S-321-95, "In the 1930s asbestos was generally recognized in England as a

disease producing agent. About this time information began to grow in the United States that asbestos was a dangerous agent."

12. Despite knowledge regarding the health hazards associated with occupational exposure to asbestos and/or asbestos-containing dusts, Defendant Railroad continued to use asbestos and/or asbestos-containing products for decades thereafter.

13. According to Defendant Railroad's Asbestos Protection Policy, dated January 1, 1985, "In addition to insulation, asbestos has been used in cement products, plaster, fireproof tiles, vinyl floor tiles, acoustical and thermal insulation and sprayed materials. Numerous locations in rolling stock contain asbestos. These include tape used to wrap steam and hot water pipes on steam locomotives, air compressor pipes on diesel locomotives prior to 1979, tape used to wrap business car piping, sealing and glazing compounds, freight car roof cements, pipe joint insulation, barriers used as insulating blocks on dynamic brake grids, lining in the bottom of fire boxes on vapor steam boilers used on passenger locomotives, gaskets and covers on steam generators, gaskets and heat shields in and around Caban oil heaters in cabooses, composition brakeshoes on locomotives and freight cars prior to 1981, arc-chutes and wire covering on locomotive, flexible trainline insulation, and gaskets generally." *See* Defendant Railroad's Asbestos Protection Policy, dated January 1, 1985, at p. 3-4.

14. According to Defendant Railroad's Asbestos Protection Policy, dated January 1, 1985, at p. 4, "Direct contact or damage to asbestos materials can occur in a number of ways, including regular work activities such as hanging pictures or attaching displays to friable material or impacts as part of the work process; maintenance activities involving

15. intentional or accidental contact with the friable material; vandalism; water damage resulting in breaking away layers of material from underlying surfaces; and vibration from sources inside or outside a building."

15. According to Defendant Railroad's Asbestos Protection Policy, dated January 1, 1985, at p. 4, "Once fibers have been released, they can remain suspended in the air for many hours, and after settling can be resuspended by air disturbances."

16. As a result of their employment with Defendant Railroad, Plaintiffs were exposed to asbestos and/or asbestos-containing materials and/or dusts and have been diagnosed with an occupationally-related lung disease, to wit: asbestosis.

17. According to Defendant Railroad's Asbestos Protection Policy, dated January 1, 1985, at VII-2, "Asbestosis is the term used to describe the most common adverse health effect associated with breathing asbestos fibers. It is a debilitating disease that in some ways resembles emphysema. When asbestos fibers enter the lungs, they are imbedded into the tissue, forming nodules of scar tissue. As these nodules form, they reduce the elasticity of the lung and thereby its ability to take up oxygen which, in turn, leads to increasing breathlessness."

18. According to Defendant Railroad's video, "Asbestos Awareness Training – Health Risks," I.D. S-321-95, "Latency period is the length of time between the exposure to asbestos and the onset of a disease."

19. According to Defendant Railroad's video, "Asbestos Awareness Training – Health Risks," I.D. S-321-95, "The typical latency period for asbestosis is 15 to 30 years."

20. According to Defendant Railroad's Asbestos Protection Policy, dated January 1, 1985, at VII-3, "In addition to asbestosis, there is an increased tendency for certain lung and digestive system cancers among asbestos workers."

21. At all relevant times, Plaintiffs were unaware of the dangerous propensities of the harmful and/or hazardous substances that they were required to work around. Likewise, Plaintiffs did not know that they had been injured or that their injuries were related to their work for Defendant Railroad until less than three years before filing suit.

22. Additionally, and/or in the alternative, Plaintiff ARTHUR L. HARRIS would respectfully show the Court that his asbestos-related claims were tolled during the period from October 9, 2009, until approximately June 22, 2011, by virtue of a tolling agreement executed with the Union Pacific Railroad Company.

### D. CAUSES OF ACTION

**Count I:** **Negligence Under the FELA**

23. Plaintiffs' injuries and damages resulted, in whole or in part, from the negligence Defendant Railroad's officers, agents or employees, or by reason of a defect or insufficiency, due to Defendant Railroad's negligence, in its cars, engines, appliances, machinery, track, roadbed, works, or other equipment, in violation of the Federal Employers' Liability Act, 45 U.S.C., 51 *et seq,* including but not limited to the following:

   a. Defendant Railroad continued to purchase, install, and/or use asbestos-containing materials for decades after Defendant Railroad became aware of the harmful and/or hazardous nature of these materials;

   b. Defendant Railroad failed to inspect its cars, engines, appliances, machinery, track, roadbed, works or other equipment for the presence of

asbestos-containing materials, even after learning of the harmful and/or hazardous nature of these materials;

c. Defendant Railroad failed to remove and/or abate its cars, engines, appliances, machinery, track, roadbed, works or other equipment of asbestos-containing materials, even after learning of the harmful and/or hazardous nature of these materials;

d. Defendant Railroad failed to warn Plaintiffs regarding the presence of asbestos-containing materials and/or of the potential health effects associated with exposure to such products;

e. Defendant Railroad filed to warn Plaintiffs regarding the synergistic effect between smoking and asbestos exposure

f. Defendant Railroad failed to properly train Plaintiffs regarding work with or around asbestos-containing materials;

g. Defendant Railroad failed to provide Plaintiffs with proper respirators for use around asbestos-containing materials;

h. Defendant Railroad failed to conduct air monitoring to determine the levels of asbestos to which Plaintiffs were exposed;

i. Defendant Railroad failed to provide Plaintiffs with comprehensive asbestos medical examinations;

j. Defendant Railroad failed to medically monitor Plaintiffs for asbestos-related conditions;

k. Defendant Railroad violated and/or disregarded its own policies and/or procedures regarding asbestos-containing materials;

l. Any other act and/or omission by Defendant Railroad that a jury may find at the time of trial to constitute negligence.

### E. DAMAGES

24. Plaintiffs seek all elements of damages, both in the past and in the future, permitted under the law from UNION PACIFIC including, but not limited to:

a)  costs for medical care and treatment, in the past and in the future;

b)  mental anguish, in the past and in the future;

c)  physical pain and suffering, in the past and in the future;

d)  fear of cancer, in the past and in the future;

e)  physical impairment, in the past and in the future;

f)  all other damages in an amount that Plaintiffs would show that they are entitled to at the time of trial;

g)  Plaintiffs also assert claims for costs of court and post-judgment interest to the extent allowed by law.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand that Defendant Railroad answer herein as the law directs; and that upon final hearing, this Court enter Judgment against Defendants for actual and special damages together with interest thereon at the legal rate, costs of court, and for other such additional and further relief, special and general, at law and in equity, which may be just and proper under the law.

Respectfully submitted,

**SAMMONS & BERRY, P.C.**

*/s/ J. Kirkland Sammons*

J. KIRKLAND SAMMONS
Arkansas Bar No.: 2006018
4606 FM 1960 West
Suite 600
Houston, Texas 77069
Tel.: (800) 519-1440
Fax: (832) 448-9170
**ATTORNEYS FOR PLAINTIFFS**